# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BRIAN F. COCHRANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1:07-cv-0437 (RCL)** |
| | ) | |
| **MICHAEL W. WYNNE** | ) | |
| **Secretary of the Air Force,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Michael W. Wynne, Secretary of the Air Force, in his official capacity,

through the undersigned counsel, respectfully moves for summary judgment on Plaintiff's claims

pursuant to Federal Rule of Civil Procedure 56 because there is no genuine issue as to any

material fact and Defendant is entitled to judgment as a matter of law.  In support of this motion,

Defendant respectfully submits the attached memorandum of points and authorities, statement of

material facts not in genuine dispute, proposed order, and an administrative record.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division

555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
LT. COLONEL RITA A. RUSSELL
AFLOA/JACL
1501 Wilson Blvd, 7th Floor
Arlington, VA 22209
703-696-9288

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN F. COCHRANE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 1:07-cv-00437 (RCL)** |
| | ) |
| **MICHAEL W. WYNNE** | ) |
| **Secretary of the Air Force,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Michael W. Wynne, Secretary of the Air Force, in his official capacity and through the undersigned counsel, respectfully moves for summary judgment on Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56 because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.  the Air Force Board for Correction of Miliary Records[1] ("ABCMR" or "Board") decisions are not an abuse of discretion, arbitrary or capricious, or contrary to law and regulation.  Defendant's statement of material facts not in genuine dispute and the Administrative Record[2] ("AR") support this memorandum.

## I. INTRODUCTION

Plaintiff was an active duty Major at the time he filed his Complaint with this Court.

_____

[1] The ABCMR is composed of civilians appointed by the Secretary of the Air Force, and has statutory authority to "correct any [Air Force] record" in order to "correct an error or remove an injustice."  10 U.S.C. § 1552(a).

[2] In addition to Plaintiff's application with the AFBCMR, the Board considers personnel records, such as the SSB Report, which are relevant to the case.  Once the case is decided, the personnel records are then returned to their respective locations. See Burton Aff., Ex. A.

(Compl. ¶ 1.)  He was considered and not selected for promotion by two separate promotion boards in 1999 and 2000.  (AR 6.)  On July 26, 2001, the AFBCMR granted Plaintiff's request to change his Promotion Recommendation Form ("PRF") for the 1999 board making it a "Definitely Promote" ("DP") instead of the original "Promote" designation.  (AR 9.)  The corrected record was considered by a Special Selection Board ("SSB") on January 7, 2002, which denied his application for promotion.  (AR 97.)

On September 5, 2002, Plaintiff requested reconsideration by the AFBCMR, requesting that the group size reflected on his PRF be changed to "six or more" instead of "N/A."  (AR 82-83.)  Plaintiff claimed that in a previous case the AFBCMR created a group size for another applicant.  The AFBCMR denied Plaintiff's request, explaining that the board had not created a group size in any previous case but instead had modified the group size to make it correct in accordance with the change in policy.  Since "N/A" was the appropriate size for Plaintiff based on Air Force guidelines, his PRF was correct and it would not be changed.  (Id.)

Plaintiff requested reconsideration again on January 27, 2003, alleging that officers with a DP rating are treated differently by SSBs than they are in normal selection boards.  (AR 85.)  The AFBCMR denied this request on February 12, 2004, determining there was insufficient evidence of error or injustice to warrant corrective action.  (AR 71-76.)  This action followed.

Plaintiff alleges three specific claims for relief:

The AFBCMR denial of giving Applicant a group size that would reflect a competitive PRF subverted and did not comport with the meaning and intent of 10 U.S.C. § 628(a)(2).  As long as the DP awarded to Applicant was facially noncompetitive, it did not reflect a record as it would have been when the board that should have considered him saw the record. . . . Further, the disparity in DP promotion rates between regular promotion boards and SSB promotion boards shows a palpable bias against Plaintiff and those similarly situated to Plaintiff.

2

> Finally, the AFBCMR should have recognized that the first SSB was obligated to
> provide reasons for the SSB denial of promotion to Plaintiff.

(Compl. 4.)  Plaintiff alleges that the AFBCMR's failure to grant relief in each of those

matters was "arbitrary and capricious, an abuse of discretion and contrary to law." (Id. at

5.)

## II.  SUMMARY OF THE ARGUMENT

Plaintiff alleges records with a DP are treated differently by SSBs than central

selection boards.  In support, he cites statistical evidence that shows differences in the

promotion rates for the two types of boards.  Other courts have already addressed and

rejected this statistical argument.  In Haselrig v. United States, 53 Fed. Cl. 111 (Ct. Cl.

2002), the court held that statistical evidence was not enough to show a flaw in a SSB's

procedures.  Plaintiff also alleges prejudice by citing a 1998 advisory opinion to the

AFBCMR that discusses perceived differences between DPs received as part of the

normal evaluation process from a senior rater, and DPs received on appeal.  This advisory

opinion is irrelevant to Plaintiff's case because it was never shown to any of his

promotion boards.  Furthermore, that advisory opinion was not Air Force policy, but

rather a description of the quality of previous promotion packets before the AFBCMR.

Plaintiff also claims it is arbitrary and capricious for SSBs to issue decisions

without detailed explanations for those decisions.  In Richey v. United States, 322 F.3d

1317 (Fed. Cir. 2003), the Federal Circuit held that no such explanations are needed.

SSBs are required to submit a report identifying their promotion decisions and a

certification that they followed the relevant procedures.  Requiring any further

3

explanation would impose procedural requirements on an agency above the statutory

minimum.

Finally, Plaintiff claims the group size on his PRF should be changed.  However,

the entry of "N/A" for his group size clearly followed the Air Force guidelines for

determining group size.  Therefore his PRF was accurate and should not have been

changed.

### III. <u>STATEMENT OF FACTS</u>

Defendant respectfully refers the Court to Defendant's Statement of Material

Facts to Which There is No Genuine Dispute filed simultaneously herewith.

### IV. <u>ARGUMENT</u>

### 1.     <u>Standard of Review for Summary Judgment</u>

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 322 (1986); <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995); <u>Molerio v.</u>

<u>FBI</u>, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any

material fact, summary judgment is required.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 247-248 (1986).

A genuine issue of material fact is one that could change the outcome of the

litigation.  <u>Id.</u> at 247.  "[T]he burden on the moving party may be discharged by

'showing'–that is, pointing out to the [Court]–that there is an absence of evidence to

support the non-moving party's case." <u>Celotex</u>, at 325. Once the moving party has met

its burden, the non-movant may not rest on mere allegations, but must instead proffer

specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Thus to avoid summary judgment, the

Plaintiff must state specific facts or present some objective evidence that would enable

the court to find he is entitled to relief.

In an opinion issued the same day as <u>Celotex</u>, the Supreme Court explained the

circumstances in which summary judgment is appropriate:

> If the evidence is merely colorable . . . or is not sufficiently probative . . .
> summary judgment may be granted . . . [T]he mere existence of a scintilla
> of evidence in support of the plaintiff's position will be insufficient; there
> must be evidence on which the jury could reasonably find for the plaintiff.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252. Unsupported speculation is not enough

to defeat a summary judgment motion; the existence of specific material evidentiary facts

must be shown. Fed. R. Civ. P. 56(e)(the nonmoving party may not rest on mere

allegations but "must come forward with 'specific facts showing there is a genuine issue

for trial.'"). <u>See</u> <u>also</u> <u>Hayes v. Shalala</u>, 902 F.Supp. 259, 263 (D.D.C. 1995)(opposition

to summary judgment must consist of more than mere unsupported allegations or

denials); <u>Johnson v. Digital Equip. Corp.</u>, 836 F.Supp. 14, 18 (D.D.C. 1993)(evidence

that is merely colorable or not sufficiently probative is insufficient to defeat summary

judgment); <u>Batson v. Powell</u>, 912 F.Supp. 565, 578 (D.D.C. 1996).

In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327, quoting Fed. R. Civ. P. 1.

### 2.     Review is Limited Under the Administrative Procedure Act

When called upon to review a decision of a military records correction board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  Chappell, 462 U.S. at 303.  To prevail in this Court, Plaintiff "must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith."  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir 1997) (quoting Sanders v. United States, 594 F.2d 804, 813 (Cl. Ct. 1979)).  To rebut this presumption, Plaintiff bears the burden to demonstrate through "cogent and clearly convincing evidence," that the ABCMR's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations.  Calloway v. Brownlee, 366 F. Supp. 2d 43, 53 (D.D.C. 2005); McDougall v. Widnall, 20 F.Supp. 2d 78, 82 (D.D.C. 1998).  Due to this very high standard, only the most egregious agency decisions do not satisfy this very deferential standard of review.  Kreis v. Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

In reviewing an agency's action under the APA standard, the Court is limited to reviewing the administrative record that was in front of the agency when it made its decision,  Commercial Drapery v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998), and it "will not disturb the decision of an agency that has examined the relevant data and

articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharm. Inc. v. Drug Enforcement Administration, 133 F.3d 8, 16 (D.C. Cir. 1998). The explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge." Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. Even if reasonable minds might reach differing conclusions, the court is not empowered to substitute its judgment for that of the agency. U.S.P.S. v. Gregory, 534 U.S. 1, 11 (2001).

    "When reviewing a decision by a military Correction Board, a Court must do so under an 'unusually deferential application of the arbitrary and capricious standard of the APA.'" Lebrun v. England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002)(quoting Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002)); see also Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006)(Review of military correction board decision is to be under a particularly deferential standard of review). "Moreover, military boards such as the ABCMR are entitled to even greater deference than civilian administrative agencies." Labin v. Harvey, 2006 U.S. Dist. LEXIS 17937, *18 (D.D.C. April 10, 2006), citing Calloway, 366 F. Supp. 2d at 53. This higher level of deference "is calculated to ensure that the courts do not become forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000). Thus, a court need only find that the ABCMR's decision "minimally contains a rational

7

connection between the facts found and the choice made." Labin, at *19, quoting

Frizelle, 111 F.3d at 176.

    **3.**    **The AFBCMR's Decision is not Arbitrary or Capricious because it rejects Plaintiff's Argument that the Disparity in DP Promotion Rates Between Regular Promotion Boards and SSB Promotion Board is a Result of Bias**

SSBs are convened pursuant to 10 U.S.C. § 628 to consider officers in various

circumstances, including those who were not recommended for promotion by a board

which the Secretary has determined to have considered either erroneous or incomplete

information. 10 U.S.C. § 628(b)(1)(A)-(B). Plaintiff's application was properly

considered by an SSB because he received a corrected PRF. At the SSB, in accordance

with AFI 36-2501, Ex. B, ¶ 6.5.2, Plaintiff competed against benchmark records which

were actually evaluated in the Calender Year ("CY") CY99B central selection board.

(AR 98.) Benchmark records are selected from the original board's "gray zone" records,

which consist of the five highest-scoring non-selects and the five lowest-scoring selects.

AFI 36-2501, Ex. B, ¶ 3.3.3.

In a memo to the AFBCMR, an officer from the Directorate of Personnel Program
Management outlined the SSB process:

> The record containing the error or injustice is compared to a sampling of officer records that "were" and "were not" selected by the original board ("benchmark records").
> The officers who comprise the SSB panel are *not* told which records are the "selects" or "non-selects," or which record is the appeal record.
> The SSB panel members score each record presented to them as if they were meeting the original selection board. Each record is rated on the "whole person concept", and scored using a scale of 6 through 10 (using half-point increments).
> An order of merit is created based on the scores given by the SSB

> panel members.  In order for the appeal record to be selected it must out-
> score all records that were "non-selects" and tie or beat the score of at least
> one of the select records by the original board.

(AR 90, emphasis added.)[3]  Quality controls are used to ensure the uniformity of

records in the gray zone across all panels.  (AR 96.)  There is no evidence in

Plaintiff's submission that his SSB was carried out in any manner other than that

described in 10 U.S.C. § 628.[4]

### a.    Other courts have rejected Plaintiff's claim that statistical difference equals unfair bias

In Haselrig v. United States, 53 Fed. Cl. 111 (Ct. Cl. 2002), the court rejected an almost

identical argument to Plaintiff's regarding the promotion rates for regular boards and SSBs. In

Haselrig the issue before the court was whether statistical data demonstrates the unfairness of

SSBs because fewer officers with "definitely promote" recommendations are promoted by SSBs

than central selection boards.  Id. at 126-27.  The Court of Federal Claims' response was clear.

> While statistical data can raise the question of whether or not SSB's procedures
> may be flawed, the data itself is not dispositive on the issue.  Plaintiff must
> identify and establish a specific flaw in the procedures the SSB used to reach its
> decision in order for the court to find the SSB procedures are inconsistent with 10
> U.S.C. § 628 and AFI 36-2501, paragraph 6.1. Id.

Since Haselrig failed to identify any flaws in the SSB procedures, his request was denied.

Id. at 130-31.  On appeal, the Federal Circuit affirmed, holding that the procedures

utilized by the Air Force in conducting SSBs constitute a permissible interpretation of the

statute and a proper means to carry out the statutory requirements.  Haselrig v. United

---

[3]  For further explanation of the SSB process, see AFI 36-2501, Ex. B, Chapter 6.
[4]  To the contrary, the SSB Report, attached as Ex. C, indicates the SSB was performed in accordance with Air Force Regulations. The SSB would have been reviewed by the ABCMR as part of the Plaintiff's personal records as exhibit B to the ABCMR, See Ex. A; AR 39.

States, 333 F.3d 1354, 1356 (Fed. Cir. 2003) ("[T]he Air Force procedures explicitly carry out what the statute requires . . . ."). In particular, the Federal Circuit determined that the methodology used in selecting benchmark records and the scoring requirements were all proper under both the statute, 10 U.S.C. § 628, and the applicable Air Force implementing regulation, AFI 36-2501, Chapter 6. Id.

> **b.    The 1998 Advisory is irrelevant because Plaintiff's SSB did not see it, it was not official policy, and its is does not demonstrate prejudice**

In addition to his statistical argument to the AFBCMR, Plaintiff suggests that the SSB was unfair because members of the SSB could guess that Plaintiff's packet with a DP was the one not previously selected for promotion and up for appeal. Plaintiff maintains that when an applicant is the only DP file in the pool of applications before the SSB, there is no doubt which file is the real one being considered on appeal for promotion purposes. According to Plaintiff this is a flaw which results in unfair outcomes. (AR 88.) First, as the ABCMR points out, while it is possible that an applicant is the only DP before a SSB, it is not necessarily true.[5] (AR 100). Second, a DP in an applicant's record is a positive, not a negative. This is why the Plaintiff initially went to the ABCMR and successfully fought to get a PRF changed from "promote" to DP. (Comp, ¶¶ 5-6.)

Even if Plaintiff's allegations were true and the SSB policies made it possible for the SSB members to surmise which record was Plaintiff's, there is still no evidence this is prejudicial.

---

[5] Plaintiff overlooks the fact that in this instance seven other officers were considered for promotion by the same SSB. None of these officers was selected for promotion. Based on the number of officers before the SSB and all of there potential DP or Promote PRFs, it is extremely unlikely this SSB could have determined which packets were up for promotion. This makes it even less likely that Plaintiff was the "victim" of the prejudice he alleges is caused by having a DP before an SSB. (Ex. C).

Boards are sworn to perform their duties properly and in absence of evidence to the contrary, we presume they do so.  <u>Frizelle</u>, 111 F.3d at 177.  A designation of DP is not a guarantee of promotion, it is merely a recommendation from one senior rater.  Although an evaluation with a DP has an advantage over records with just  "Promote" evaluations, a DP recommendation from a senior rater does not mean that promotion is guaranteed.  <u>Id</u>.  Instead, as the Memorandum of Instructions for Plaintiff's SSB makes clear, a SSB is obligated to consider several factors in determining whether an officer should be selected for promotion.[6]  In fact, the Memorandum of Instructions for Plaintiff's SSB specifically warns that while "a DP is the strongest recommendation a senior rater can give and is based on that senior rater's assessment of the strength of the officer's performance. . . as the [SSB], it is [your] responsibility to evaluate the entire spectrum of quality *among the total population of eligible officers*.  In the end, you are charged to select from that population based on *all the information before you*." (Ex. C, Memorandum of Instructions, p. 10, emphasis added.)  As the advisory opinion from the Offices of Primary Responsibility pointed out to the AFBCMR, if an officer has a DP "that officer has an additional plus factor in his/her record.  What that additional factor will not do, however, is increase the overall quality of the record."  (AR at 100.)

Furthermore, accepting Plaintiff's argument would presumably require radically modifying the SSB process to include several DP records from the original central selection board.  This would make SSB promotions more difficult, time-consuming, and inconsistent with

---

[6] The SSB Board was instructed to "use the whole person concept to assess such factors as job performance, professional qualities, leadership, depth and breadth of experience, job responsibility, academic and professional military education, and specific achievements." (Ex. C, Memorandum of Instructions, p. 6)

AFI 36-2501, which specifically describes the identification of "gray zone" records from the

original board which are to be used in an SSB.  (AFI 36-2501, Ex. B, Chapter 6; AR 100-01.)

Plaintiff cites an advisory from a 1998 AFBCMR case as evidence that SSBs treat a

record with a DP garnered from the corrections process differently from one granted by the

normal process.  (AR 92-95, 99.)  In that advisory a Staff Judge Advocate points out that there

are differences between receiving a DP through the normal process and receiving one on appeal.

(AR 93-94.)  According to that advisory the main difference is that on appeal the individual is

not competing with others for a limited number of DP designations. (AR 94.)  Thus, the advisory

opines that a DP obtained through appeal "cannot be expected to carry the weight of a DP given

in the normal course."  (Id.)

Plaintiff calls this "official Air Force policy…unsupported by law, regulation or fact."

(Id. at 99.)  Plaintiff further alleges this advisory demonstrates that SSBs in fact treat DPs

received through appeal differently, making the entire process unfair.  There are several problems

with Plaintiff's argument.  First and foremost, there is no evidence that the advisory referenced

by Plaintiff was furnished to Plaintiff's SSB, or any promotion board.  (Id.)  As a result, the

advisory could not have affected the results of Plaintiff's promotion application.  Second, the

1998 advisory Plaintiff references did not (and does not) represent official Air Force policy.  (AR

99.)  Rather, the1998 advisory was given to the AFBCMR as "merely a description (after the

fact) of the actual quality of many of the records that contain a DP awarded by the corrections

process and then considered by the SSB."  (AR 99-100.)

The AFBCMR's reasoning for rejecting Plaintiff's request was clear and rational.

> [T]he advisory opinion supplied by applicant [as proof of the flaw] was written several years prior to applicant's SSB and the Air Force has verified the fairness and validity of the SSB process. Unfortunately, the applicant and his counsel find it improbable that the applicant was not selected for promotion with a "DP" given the overall selection rate for individuals on his board with the same recommendation. Although, the selection rate for his board may have been 100 percent, we agree with the Air Force that an awarded recommendation of "DP" was never meant to be an absolute guarantor of promotion selection and that it is not totally uncommon for an officer to not be selected with a "DP" promotion recommendation. While we make no argument regarding the applicant's outstanding record of performance and qualification for promotion, the same can be said of his contemporaries that were similarly not selected for promotion. Therefore, we do not find a sufficient basis to grant the relief requested in this case. (AR 76).

Plaintiff failed to identify any errors and failed to present any evidence to refute the basis for the AFBCMR decision. Therefore the AFBCMR's decision was not arbitrary or capricious.

**4.     The AFBCMR Properly Explained How the SSB Reached its Ultimate Decision and is Not Required to Provide Detailed Findings Absent Some Evidence of Irregularity in the SSB Proceedings**

Plaintiff contends that a more detailed explanation is required from the SSB as to why it did not select Plaintiff for promotion. He claims the AFBCMR's reliance on the SSB decision without the SSB providing a specific reason as to why he was not selected for promotion is arbitrary and capricious. The government disagrees. Under the APA there is "the strong presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." Frizelle, 111 F.3d at 177.

Plaintiff cites two cases to support this position before the AFBCMR. In both Homer v. Roche, 226 F. Supp. 2d 222 (D.D.C. 2002), and Miller v. Roche, No. 03-1742, 2004 WL

13

3257070 (D.D.C. Nov. 4, 2004), this Court remanded decisions by the AFBCMR that upheld

SSB determinations.  In each case this Court held that since no explanation or rationale for the

SSB's decision was given, it was impossible to determine whether its decision was arbitrary or

capricious.  Miller at *7; Homer, 226 F. Supp. 2d at 226.  Those cases can be clearly

distinguished from the instant one.  As the AFBCMR pointed out in its decision,

> In reading the two cases cited by counsel, it is less than clear from the court's
> opinions whether the board report was ever part of the administrative record
> considered by the court.  In fact, the statements by the court suggest that they were
> not privy to all of the information that might have been available.  That
> information would include the board report, the first day briefing information
> provided to board members, the Memorandum of Instructions that provides the
> Secretary's guidance, as well as the certification by the members of the Board that
> they followed the instructions as well as the requirements of the DoD directive,
> and that they made all selections in accordance with the instructions.

 (AR 110,118.)  In the instant case, the SSB provided all of the materials that were lacking in

Miller and Homer. (Ex. C.)

Plaintiff's argument is also damaged by Richey v. United States, 322 F.3d 1317 (Fed. Cir.

2003).  In that case the Federal Circuit ruled directly on the issue of whether SSBs were required

to provide explanations for their decisions.  The court held no further explanation was required

because "the statute imposes no requirements on the SSBs to provide detailed findings, and the

SSB reports here complied with the statutory requirements." Id. at 1326.  The court also points

out that it cannot require SSBs to meet additional reporting requirements because courts are not

allowed to impose procedural requirements on an agency beyond the minimum statutory

requirements. Id. at 1326-27 (citing Vt. Yankee Nuclear Power Corp. v. Natural Res. Def.

Council, 435 U.S. 519, 548 (1978)).  The court did, however, hold that there are certain

circumstances under which an explanation from an SSB will be required.  However, "[b]ecause

14

of [the] presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." Id. at 1237. Following the rule of Richey, the AFBCMR determined that there was no evidence to suggest the SSB was unfair, and therefore correctly decided that there was no need for a more detailed explanation by the SSB (AR 110-12).

The AFBCMR was also advised that "disclosure of the SSB's deliberation was prohibited by 10 U.S.C. § 618(f). (AR 119.) Subsection 618(f) states that "[e]xcept as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board." 10 U.S.C. § 618(f). It would have been inappropriate for the AFBCMR to provide Plaintiff with an explanation for the SSB's decision that contradicts § 618(f).[7]

The AFBCMR, adopting the rationale of the advisories, concluded:

[A]fter reviewing the complete evidence of record, including counsel's assertion that two cited federal court cases 'stand for the proposition that it is arbitrary and capricious for an SSB to fail to provide rationale for denial of promotion or selection to senior service school,' was not persuaded by counsel's argument that the applicant should again be considered for promotion by SSB because the previous SSBs that denied him promotion failed to provide rationale. The AFBCMR did not find counsel's arguments sufficiently compelling to overcome the advisory basis for their conclusion that the applicant has not been the victim of an error or injustice warranting the relief requested.

(AR 111-112.) The AFBCMR's decision was not arbitrary or capricious. Therefore, summary

_____

[7] In dicta, the Richey court seemed to reject a categorical exclusion against reviewing the deliberations of a SSB. However, the court did not address 10 U.S.C. § 618(f) at all. Nor did the Richey court decide the issue, because like in the instant case, there was no evidence to suggest the SSB was unfair. While 10 U.S.C. § 628(g)(2) does grant federal courts the power to review "the action of a special selection board," it does not necessarily give the courts authority to review the actual deliberations of the board members, even if such review were possible. In any event, as in Richey, such action is certainly inappropriate in this case where there is an absence of actual record evidence suggesting the SSB was unfair.

judgment should be granted.

5.   <u>The AFBCMR's Decision Not to Change Plaintiff's Group Size to the SSB Pool Was Not Arbitrary or Capricious</u>

Plaintiff alleges the AFBCMR decision not to grant his request for the number "six or more" to appear in Block VI of his PRF was an error.  (Compl. ¶ 21.)  He argues that because of this error the SSB saw an application which did not reflect the record as it would have been had the original promotion board seen it.  (<u>Id.</u>)  In this instance, Plaintiff is just wrong.  The original PRF contained "N/A" in Block VI.  (AR at 18, Original PRF.)  AFI 36-2406, Table 8.2 governs what information should be entered into Block VI of a PRF.  Rule 9 of that table indicates that when the allocation rate is 35 to 90 percent, and the group size is 3 or more, "N/A" should be entered in Block VI. (AFI 34-2406, Ex. D.)  These allocation rate and group size requirements were both met in Plaintiff's case, so "N/A" was the appropriate entry.  Plaintiff's corrected PRF, the one submitted to the SSB, looked exactly as it would have looked if it was submitted to the original promotion board.  (AR at 61, Corrected PRF.)

In his application to the AFBCMR, Plaintiff also argued that the AFBCMR created a group size for another applicant in a prior AFBCMR case, and that they should do the same for him.  The AFBCMR responded

> Contrary to your belief, the Board did not create a group size and make the applicant first in that group in the case of Arthur Homer.  The Board merely agreed with the Office of Primary Responsibility (OPR) in that, since the *policy* governing the changing of the group size on a Promotion Recommendation Form (PRF) to "1" when it had been upgraded from a "promote" (P) to a "Definitely Promote" (DP) had changed, the applicant's group size should be changed to the one he had on the original report.
>
> In view of the foregoing and inasmuch as your client's PRF reflects his original group size, i.e., N/A, no basis exists warranting reconsideration of his case.

(AR 84) (Emphasis added.)

Plaintiff's record appeared before the SSB with exactly the same group size in Block VI as the PRF that met the central lieutenant colonel promotion board.  Plaintiff has clearly failed to show the AFBCMR decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. As the ABCMR acted reasonably and lawfully, there is no genuine issue of material fact, and judgment in favor of the Defendant is appropriate in this case.

## V.  **CONCLUSION**

For the foregoing reasons, the Defendant respectfully requests that this Court enter judgment in favor of the Defendant denying Plaintiff's claims.

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

17

Of Counsel:
LT. COLONEL RITA A. RUSSELL
AFLOA/JACL
1501 Wilson Blvd, 7th Floor
Arlington, VA 22209
703-696-9288

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN F. COCHRANE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 1:07-cv-0437 (RCL)** |
| | ) |
| **MICHAEL W. WYNNE** | ) |
| **Secretary of the Air Force,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## <u>TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to LcvR 7(h) and in support of Defendant's Motion for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there is no genuine dispute.  The Administrative Record ("AR") supports this statement.

1.  Plaintiff Brian F. Cochrane was an active duty Major at the time he filed his Complaint with this Court (Compl. ¶3.)  Plaintiff was considered and not selected for promotion by the CY99B[8] (November 30, 1999) and CY00A (November 28, 2000) central lieutenant colonel promotion boards.  (AR 6.)

2.  Air Force Instructions ("AFI") 36-2501 and 36-2603 establish procedures that comply with 10 U.S.C. §§ 628 and 10 U.S.C § 1552, et seq., respectively, as they pertain to promotion of officers and correction of military records.

_____

[8] "CY" in promotion board labels stands for "Calendar Year."

1

3.  On July 26, 2001, the Air Force Board for the Correction of Military Records[9]

("AFBCMR") granted Plaintiff's request to change his Promotion Recommendation Form

("PRF") for the CY99B promotion board to represent a "Definitely Promote" (DP)

recommendation instead of the original "Promote" recommendation.  (AR 9.)  The AFBCMR

also recommended that Plaintiff's corrected record be considered for promotion by a Special

Selection Board ("SSB").

4.  The purpose of an SSB is to "consider officers who were improperly considered, or

not considered, by one or more Central Selection Boards or quarterly captain selection

processes."  AFI 36-2501, Ex. B, ¶ 6.1.  An SSB considers the records of the officers under

review as they "would have appeared to the original board had the officers been properly

considered."  Id. ¶ 6.5.2.  Selection decisions are made by comparing the records to "benchmark

records" from the original board.  Id.  The benchmark records consist of the five highest-scoring

nonselects and the five lowest-scoring selects from the original board.  Id. ¶ 3.3.3.  The SSB

panel members are not told which records are actually under review and which are the

benchmark records.  (AR 90.)  The SSB panel scores and ranks the records as the original board

would.  AFI 36-2501, Ex. B, ¶ 6.5.3.  An individual officer is promoted if he scores higher than

all of the nonselect benchmark records, and ties at least one select benchmark record.  Id. ¶ 6.5.4.

5.  On January 7, 2002, Plaintiff's corrected record was among the eight records

considered by a Special Selection Board ("SSB") for promotion to lieutenant colonel (Ex. C).

All eight records were denied promotion. (Id.)

---

[9]The AFBCMR is composed of civilians appointed by the Secretary of the Air Force, and has
statutory authority to correct any Air Force record in order to correct an error or remove an
injustice.  AFI 36-2603, Ex. E, ¶ 1-2.  The AFBCMR may request advisory opinions on any
application from "any Air Force organization or official."  Id. ¶ 4.1.

6. On September 5, 2002, Plaintiff requested reconsideration by the AFBCMR, requesting that the group size reflected on Plaintiff's PRF be changed from "N/A" to "six or more." (AR 82-83.) Mr. Mack Burton, Executive Director of the AFBCMR, responded by letter on December 9, 2002.

> Contrary to your belief, the Board did not create a group size and make the applicant first in that group in the case of Arthur Homer. The Board merely agreed with the Office of Primary Responsibility (OPR) in that, since the policy governing the changing of the group size on a Promotion Recommendation Form (PRF) to "1" when it had been upgraded from a "promote" (P) to a "Definitely Promote" (DP) had changed, the applicant's group size should be changed to the one he had on the original report. In view of the foregoing and inasmuch as your client's PRF reflects his original group size, i.e, N/A, no basis exists warranting reconsideration of his case (AR 84.)

7. On January 27, 2003, Plaintiff once again requested reconsideration and direct promotion to lieutenant colonel alleging he had positive proof that DPs are treated differently by SSBs than normal boards. (AR 85, 88-89.) Before the AFBCMR acted on his case, Plaintiff requested reconsideration directly from Secretary Roche on April 15, 2003. (AR 68.)

8. On August 15, 2003, at Plaintiff's request, his case before the AFBCMR was placed on hold. (AR 103.) Then on November 7, 2003, Plaintiff reinitiated his AFBCMR case (AR 105). On February 12, 2004, the AFBCMR determined there was insufficient evidence of error or injustice to warrant corrective action. (AR 71, 72-76.)

9. On March 1, 2005, Plaintiff sent a letter to the AFBCMR alleging that it is arbitrary and capricious for an SSB to fail to provide a rationale for "denial" of promotion or selection to senior service school. (AR 114-15.) On November 9, 2005, the AFBCMR

found that the evidence Plaintiff presented did not demonstrate the existence of probable

material error or injustice and denied Plaintiff's application for relief.  (AR 108-12.)

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
LT. COLONEL RITA A. RUSSELL
AFLOA/JACL
1501 Wilson Blvd, 7th Floor
Arlington, VA 22209
703-696-9288

## AFFIDAVIT OF MR. MACK M. BURTON

1. I, Mack M. Burton am a YC 03 (formerly GS-15) employed by the United States Air Force at Andrews Air Force Base Maryland where I am the Executive Director of the Air Force Board for Correction of Military Records (AFBCMR) . I first came to work at the Board in 1963, performed examiner duties from 1969 to 1995, was named Deputy Executive Director in 1994, and was promoted to the position of Executive Director in 1995. I am the legal custodian for the records of the AFBCMR.

2. I have been asked to explain what it means in an AFBCMR Record of Proceedings (ROP) when Exhibit B is marked with the word "Withdrawn" on it.

3. Although I cannot testify with certainty about this specific case, I can relate normal case processing procedures which I believe will explain the wording on the Exhibit B cover sheet.

4. When a member files an application with the AFBCMR and personnel records are relevant to the case, our intake unit at Randolph Air Force Base arranges for expert personnel and/or legal advisories from the offices having jurisdiction over the issues being reviewed and forwards the complete case file, including the original master personnel records (MPRs) to the AFBCMR at Andrews. The original MPRs remain with the case file and are available to the AFBCMR panel members until the case is decided. The MPRs are then returned to wherever they came from, which is frequently the Air Force Personnel Center or the National Records Center located in St. Louis MO. Once the case is finalized by the AFBCR panel and/or the Director, Air Force Review Boards Agency, the records are returned to the place of origin. Exhibit B to the Board's ROP is normally noted to be "Applicant's Master Personnel Records" (MPRs)  records and the word withdrawn indicates to us the applicant's MPRs have been returned to the location from which they were initially retrieved.

5. Pursuant to 28 U.S.C. 1764, I declare under penalty of perjury that the foregoing is true and correct.

Mack M. Burton
Executive Director
Air Force Board for Correction of Military Records
August 20, 2007

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**



*AIR FORCE INSTRUCTION 36-2501*

*16 JULY 2004*

Incorporating Change 1, 5 February 2007

*Personnel*

*OFFICER PROMOTIONS AND SELECTIVE*
*CONTINUATION*

### COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**ACCESSIBILITY:**   Publications and forms are available on the e-Publishing website at
**www.e-publishing.af.mil** for downloading or ordering.

**RELEASABILITY:**   There are no releasability restrictions on this publication.

---

OPR:  HQ AFPC/DPPPO

Supersedes  AFI 36-2501, 6 May 2004

Certified by:  HQ AFPC/DPP
(Col William D. Foote)
Pages:  107

---

The instruction establishes the objectives and procedures for promoting active duty commissioned offic-
ers from second lieutenant to colonel (**PART 1**); outlines how to continue active duty officers twice non-
selected for promotion (**PART 2**); and outlines promoting officers to the grades of brigadier and major
general (**PART 3**). Portions of **PART 3** are marked when they apply to United States Air Force Reserve
(USAFR) and Air National Guard of the United States (ANGUS). The instruction implements Title 10,
United States Code (U.S.C.), *Armed Forces*, Chapter 36, *Promotion, Separation, and Involuntary Retire-
ment of Officers on the Active Duty List*, Chapter 38, *Joint Officer Management*, Chapter 43, *Rank and
Command*, Chapter 60, *Separation of Regular Officers for Substandard Performance of Duty or for Cer-
tain Other Reasons*, and Chapter 77, *Posthumous Commissions and Warrants*; Title 32, United States
Code (U.S.C.) **Chapter 3**, *Personnel*; Executive Order 12396, *Defense Officer Personnel Management
Act*; current Department of Defense Directives (DoDD) 1310.1, *Rank and Seniority of Commissioned
Officers*, 1320.8, *Continuation of Regular Officers on Active Duty and Reserve Commissioned Officers on
the Reserve Active Status List*, 1320.11, *Special Selection Boards*, 1320.12, *Commissioned Officer Promo-
tion Program*, and 1334.2, *Frocking of Commissioned Officers*; Department of Defense Instructions
(DoDI) 1320.4, *Military Officer Actions Requiring Approval of the Secretary of Defense or the President,
or Confirmation by the Senate*, 1320.13, *Commissioned Officer Promotion Reports (CORPs) and Proce-
dures*, and 1320.14, *Commissioned Officer Promotion Program Procedures*, and Chairman of the Joint
Chiefs of Staff (CJCS) Instruction 1330.02(a)(b), *Review of Promotion Selection Board Results by the
Chairman of the Joint Chiefs of Staff*. This instruction carries out Air Force Policy Directive (AFPD)
36-21, *Utilization and Classification of Air Force Military Personnel*, AFPD 36-25, *Military Promotion
and Demotion*, and AFPD 36-26, *Military Force Management*.

This instruction requires the collection and maintenance of information protected by the Privacy Act of
1974. The authorities to collect and maintain the data prescribed in this instruction are Title 10, U.S.C.,
Sections 8013, *Secretary of the AF* and 8032, *The Air Staff General Duties*. System of Records Notice
F036 AF-PC M, *Officer Promotion and Appointment*, and F036 AF-PC Q, *Personnel Data System (PDS)*,
apply. Refer to **Attachment 1** for a glossary. Process supplements that affect any military personnel func-

**Exhibit B**                                         **1 of 5**

## Chapter 3

## POST-BOARD INSTRUCTIONS

### 3.1. PDUSD (P&R).

3.1.1. Approves board reports for promotion to all grades below the grade of brigadier general for all Central and Special Selection Boards.

3.1.2. Reviews the Commissioned Officer Promotion Report, RCS: DD-P&R(A)1621, *Defense Officer Promotion Report*.

**3.2. HQ USAF/DPPP.** Prepares the Commissioned Officer Promotion Report, RCS: DD-P&R (A)1621. Prepares this report according to DoDD 1320.12, and DoDI 1320.13 and 1320.14. The report will contain a narrative and statistical summary of promotion opportunity and timing compared to the Defense Officer Personnel Management Act objectives and DoD guidelines. Submit report (through channels) to the PDUSD (P&R) by 15 January of each year.

### 3.3. Board Recorders.

3.3.1. Collect all score rosters, internal working papers, etc., and ensure board members do not retain copies of any such documents.

3.3.2. Destroy all score rosters and internal working papers associated with the board that are not part of the board report. Do not do this until approval of the board results by PDUSD (P&R) and the requirements contained in paragraph **3.3.3.** are met.

3.3.3. Identify five benchmark records (provided there is sufficient quota) from among the lowest scoring selects and five benchmark records from among the highest scoring nonselects (IPZ or APZ and BPZ).

**3.4. Board President.** Provides feedback to the SECAF on how well the board complied with the Secretarial instructions to the board (for example, joint experience, acquisition experience, etc.).

### 3.5. HQ AFPC.

3.5.1. HQ AFPC/DPPB:

3.5.1.1. Prepares board reports as specified in DoDI 1320.14, enclosure 6, and Title 10, U.S.C., Section 617.

3.5.1.2. Prepares Title IV--Joint Officer Personnel Policy Promotion Report that shows promotion comparisons as a measure of the quality of officers assigned to joint duty required by Title 10, U.S.C., Section 662, Promotion Policy Objectives for Joint Officers.

3.5.1.3. Includes in the board report for the approval authority's review, the race and ethnic profile data of the population considered by selection boards for promotion to major, lieutenant colonel and colonel (all competitive categories).

3.5.1.4. Immediately after approval of the board by the approval authority, HQ AFPC/DPPBR removes the letters to the promotion board from the OSR and forwards them to HQ AFPC/

## Chapter 6

## SPECIAL SELECTION BOARDS (SSB)

**6.1. Holding SSBs.** HQ AFPC/DPPB conducts promotion SSBs to consider officers who were improperly considered, or not considered, by one or more Central Selection Boards or quarterly captain selection processes. Use SSBs for active duty, separated, or retired officers if eligible according to paragraph **6.3**. SSBs replicate central selection boards, to include pre- and post-board procedures and policies as outlined in **Chapter 1** through **Chapter 5** of this instruction, to the maximum extent possible.

**6.2. SSB Approval Authority.**

6.2.1. The Air Force Board for Correction of Military Records (AFBCMR) or a federal court can direct an officer for consideration by SSB.

6.2.2. The Chief, Promotion, Evaluation, and Recognition Division (HQ AFPC/DPPP) can approve an eligible officer for consideration by SSB.

**6.3. Conditions That May Warrant an SSB.** Grant SSBs for promotion to the grade of captain through colonel based on:

6.3.1. Legal, Administrative, and Material Errors. Acting on behalf of the SECAF, HQ AFPC/DPPP and HQ AFPC/DPPPO can direct an SSB for an officer if it is determined:

6.3.1.1. The action of the board that considered the officer was contrary to law or involved material error of fact or material administrative error; or

6.3.1.2. The board did not consider material information that should have been available in compliance with pertinent Air Force directives and policies.

6.3.1.3. An eligible officer did not meet a board or met the board in an incorrect promotion zone or competitive category.

6.3.2. Pursuant to Formal Appeal. The AFBCMR can grant SSBs when they determine an officer's nonselection for promotion resulted because of an error or injustice in the officer's record.

6.3.3. Exercising Reasonable Diligence. Do not have an SSB if, by exercising reasonable diligence, the officer should have discovered the error or omission and could have taken corrective action before the originally scheduled board convened.

**6.4. Submitting Appeals for SSBs.** Officers submit applications for SSBs using DD Form 149, **Application for Correction of Military Record,** under the provisions of Title 10, U.S.C., Section 1552 and AFI 36-2603, *Air Force Board For Correction of Military Records*; or, AF IMT 948, **Application for Correction/Removal of Evaluation Report,** under the provisions of AFI 36-2401, *Correcting Officer and Enlisted Evaluation Reports.*

**6.5. SSB Procedures.** SSBs:

6.5.1. Consist of officers who meet qualifications outlined in paragraph **1.1.1.3.** and who are a diverse representation of MAJCOMs, career areas, and for the line competitive category, aeronautical rating.

6.5.2.  Consider the records of officers as they would have appeared to the original board had the officers been properly considered. Compare the officers' records with benchmark records from the original boards (paragraph **3.3.3.**).

6.5.3.  Use the scoring procedures outlined in paragraphs **2.17.** and **2.18.**

6.5.4.  Select an officer if the SSB finds him or her fully qualified for promotion and if his or her record scores higher than all the nonselect records and ties at least one of the selected records from the original board.

6.5.5.  Identify any officer considered by the board whose record, in the opinion of the majority of the members of the board, indicates the officer should "Show Cause" for his or her retention on active duty (AFI 36-3206).

6.5.6.  Provide a report according to paragraph **2.36.** A separate board report is written for each board being reconstituted.

**6.6.  Selection by an SSB.** Normally, an officer considered by an SSB is selected if the SSB finds him/her fully qualified for promotion and if his/her record scores higher than all the nonselect benchmark records and ties, or beats at least one of the select benchmark records.

6.6.1.  When SECAF determines it is necessary, he/she may, prior to the convening of the SSB, direct the use of a different selection methodology.

6.6.2.  When the promotion opportunity at the original board was 100% (fully qualified method of selection), an officer considered by an SSB is selected if the SSB finds him/her fully qualified for promotion.

**6.7.  Time Limits.**

6.7.1.  SECAF will either convene an SSB or deny SSB consideration within six months of receipt of a complete and properly executed request for SSB consideration.

6.7.2.  SECAF will take final action on the Report of an SSB, in accordance with Title 10, U.S.C, Section 618(a), within six months of convening the board.

6.7.3.  SECAF may extend the time limits in paragraphs **6.7.1.** and **6.7.2.** in a particular case or category of cases, for not more than an additional six months each, when he/she determines that a longer period for consideration is warranted. SECAF may not delegate the authority to make this determination.

**6.8.  Writing Letters to SSBs.**

6.8.1.  Mail letters to the SSB Program Section (HQ AFPC/PBX) to arrive not later than 2359 Central Standard Time (CST) the day prior to the board convening date.

6.8.2.  For individuals meeting more than one SSB, prepare and mail separate letters to each board.

6.8.3.  Address letters to: CY (insert the appropriate year and grade), HQ AFPC/DPPPO, 550 C Street West, Suite 8, Randolph AFB TX 78150-4710. *(NOTE: To preserve anonymity, do not date the letter and do not address the letter to the "Special Selection Board".)*

**AFI36-2501   16 JULY 2004**

6.8.4.  Letters with attachments will not exceed 10 pages total combined: 5 two-sided pages or 10 one-sided pages. Letters and attachments exceeding 10 pages total will be returned to the officers.

**6.9.  Commander Actions on SSBs.**

6.9.1.  Advise officers of SSB results.

6.9.2.  Determine the propriety of promotion and, if appropriate, initiate action outlined in **Chapter 5**. This applies even if the officer's date of rank will be effective upon public release (promotion to captain) or Senate confirmation (for promotion to major and above). This does not apply to those officers who have served or are already serving in the selected grade.

**6.10.  Promoting Officers by SSB.** PDUSD (P&R) is the approval authority for all SSBs. Promote officers upon PDUSD (P&R) approval (to Captain only) or Senate confirmation (if required). Promote the officer with a date of rank and effective date he or she would have received if considered and selected by the original board. The member, based on his or her retroactive promotion by SSB, may be eligible for further consideration by selection boards, provided he or she meets the eligibility criteria.

6.10.1.  When promotion results in the actual or constructive reinstatement on active duty of an officer who had been separated, any entitlement to back active duty pay and allowances accruing to the officer will be subject to an appropriate offset for civilian earnings, and other offsets authorized by law.

**6.11.  Disclosing SSB Proceedings.** Release of information is the same as central selection boards (see paragraph **2.43.**).



DEPARTMENT OF THE AIR FORCE
HEADQUARTERS AIR FORCE PERSONNEL CENTER
RANDOLPH AIR FORCE BASE TEXAS

8 January 2002

MEMORANDUM FOR SAF/OS

FROM:  HQ AFPC/DPPB
       550 C Street West Ste 5
       Randolph AFB TX 78150-4707

SUBJECT:  Report (Special Selection Lieutenant Colonel [Line] Board, CY99B,
          30 November 1999)

This is a report of the proceedings of a board of officers which convened in the Selection Board Secretariat, Randolph AFB TX, pursuant to instructions contained in a HQ AFPC/DPPB Staff Summary Sheet (SSS) dated 20 December 2001.  Appropriate members were present during each session of the board.

The convening notices required by 10 U.S.C. 614 are at Atch 1.  The board convened at 0835, 8 January 2002, and adjourned at 1040, 8 January 2002.

The board was furnished the names and records of eight Line officers eligible for promotion to the grade of Lieutenant Colonel, United States Air Force.

The board met to determine whether these officers would have been recommended for promotion had they been properly considered by the regularly scheduled Central Selection Lieutenant Colonel [Line] Board, CY99B, 30 November 1999.

The board recommends that the following officers not be promoted to the grade of Lieutenant Colonel, United States Air Force.  The officers were considered under the provisions of the authority indicated:

| Name | Number | Authority |
|---|---|---|
| Boles, Dean K. | 7605 (I/APZ) | AFI 36-2501, Para 6.3.2 |
| Cabanting, Darrell G. | 7346 (I/APZ) | AFI 36-2501, Para 6.3.2 |
| Canada, Christopher L. | 6943 (I/APZ) | AFBCMR 01-00967, 3 August 2001 |
| Cochrane, Brian F. | 0005 (I/APZ) | AFBCMR 01-00969, 3 August 2001 |
| Hering, Mark A. | 2879 (BPZ) | AFI 36-2501, Para 6.3.2 |
| Marlin, Evan N. | 4299 (I/APZ) | AFI 36-2501, Para 6.3.2 |
| Miller, Robert L., Jr. | 2764 (I/APZ) | AFBCMR 01-01234, 4 September 2001 |
| Smith, Kenneth L. | 8744 (I/APZ) | AFI 36-2501, Para 6.3.2 |

The board certifies that:

    a. To the best of our knowledge, the board complied with DoD Instruction 1320.14;

        b. We were not subject to or aware of any censure, reprimand, or admonishment resulting from the recommendations of the board or the exercise of any lawful function within the authorized discretion of the board;

        c. We were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the board's recommendations;

        d. We were not party to or aware of any attempt at unauthorized communications; and

        e. To the best of our knowledge, the board carefully considered the record of each officer whose name was furnished to the board.

Attachment:
Convening Notices

2                                    FOR OFFICIAL USE ONLY

**Exhibit C**                                    **2 of 21**

Report (Special Selection Lieutenant Colonel [Line] Board, CY99B, 30 November 1999), 8 January 2002

## BOARD MEMBERS

LEROY BARNIDGE, JR.
Major General, USAF
President

KENNETH M. DECUIR
Brigadier General, USAF
Member (Joint Representative)

ARTHUR B. MORRILL III
Brigadier General, USAF
Member

MICHAEL W. PETERSON
Brigadier General, USAF
Member

HENRY L. TAYLOR
Brigadier General, USAF
Member

WILLIAM E. SAIER
Colonel, USAF
Member

3

FOR OFFICIAL USE ONLY

**Exhibit C**                                    **3 of 21**

Report (Special Selection Lieutenant Colonel [Line] Board, CY99B, 30 November 1999),8 January 2002

## SUPPORT PERSONNEL WITHOUT VOTE

WENDY S. CAMPO
Colonel, USAF
Recorder

KEVIN G. BOGGS
Lieutenant Colonel, USAF
Recorder

SCOTT A. ARCURI
Major, USAF
Recorder

SUSAN B. SCHLACTER
Major, USAF
Recorder

WILLIAM J. CONLEY
Captain, USAF
Recorder

GREGORY MANORA
Captain, USAF
Recorder

CHRISTOPHER R. PARRISH
Captain, USAF
Recorder

DAVID L. STANFIELD
Captain, USAF
Recorder

HOWARD G. CLAYTON
GS-12, DAF
Recorder

MARTHA M. CANTU
GS-6, DAF
Admin Staff

FOR OFFICIAL USE ONLY

Exhibit C                    4 of 21

Report (Special Selection Lieutenant Colonel [Line] Board, CY99B, 30 November 1999)8 January 2002

KIRBY N. BRYANT
GS-5, DAF
Admin Staff

WILLIAM C. CLINGO, JR.
MSgt, USAF
Admin Staff

EDWIN L. DAVIS
SSgt, USAF
Admin Staff

JEANNINE P. PLUMMER
SSgt, USAF
Admin Staff

CHRISTOPHER J. CANTU
SrA, USAF
Admin Staff

CLAUDIA P. OLIVA
SrA, USAF
Admin Staff

JONATHAN R. SLAUGHTER
AIC, USAF
Admin Staff

**APPROVED FOR THE PRESIDENT:**

Ceil N. M. Crum, Acting    DATE   5/16/02

5

MEMORANDUM OF INSTRUCTIONS
SPECIAL SELECTION BOARDS
7 JANUARY 2002

THESE BOARDS ARE BEING CONVENED UNDER THE PROVISIONS OF TITLE 10, UNITED STATES CODE; DOD DIRECTIVES 1320.11, AND 1320.12; DOD INSTRUCTION 1320.14 AND 6000.13; AIR FORCE INSTRUCTIONS 36-2501 AND AIR FORCE POLICY DIRECTIVE 36-25.  THE PURPOSE OF THE BOARDS IS TO CONSIDER OFFICERS OF THE LINE, MEDICAL CORPS AND DENTAL CORPS FOR PROMOTION TO CAPTAIN THROUGH COLONEL.

FOR SPECIAL SELECTION BOARDS, QUOTAS ARE NOT PROVIDED. SELECTION/NONSELECTION VIA THE SPECIAL SELECTION BOARD PROCESS IS DETERMINED BY A COMPARISON OF THE CONSIDEREE'S RECORD AGAINST THE LOWEST SCORING RECORDS OF OFFICERS SELECTED FOR PROMOTION AND THE HIGHEST SCORING RECORDS OF NONSELECTEES FROM THE ORIGINAL BOARD.

YOU MUST ACT IN THE BEST INTEREST OF THE AIR FORCE AND NOT ANY PARTICULAR COMMAND, SPECIALTY, OR GROUP.  WHILE YOU ARE HERE YOU WORK DIRECTLY FOR ME UNDER THE SUPERVISION OF THE BOARD PRESIDENT, WHO IS A NONVOTING MEMBER AND PERFORMS ADMINISTRATIVE DUTIES TO ENSURE THE BOARDS ARE CONDUCTED IN ACCORDANCE WITH TITLE 10, UNITED STATES CODE; DOD DIRECTIVES AND INSTRUCTIONS; AIR FORCE INSTRUCTION; AIR FORCE POLICY DIRECTIVES; AND MY GUIDANCE.  THE BOARD PRESIDENT HAS NO AUTHORITY TO DETERMINE ANY MATTER THAT WOULD CONSTRAIN THE BOARD FROM RECOMMENDING FOR PROMOTION THOSE OFFICERS BEST QUALIFIED TO MEET THE NEEDS OF THE AIR FORCE.

Exhibit C                                    6 of 21

YOU WILL USE THE WHOLE PERSON CONCEPT TO ASSESS SUCH FACTORS AS JOB PERFORMANCE, PROFESSIONAL QUALITIES, LEADERSHIP, DEPTH AND BREADTH OF EXPERIENCE, JOB RESPONSIBILITY, ACADEMIC AND PROFESSIONAL MILITARY EDUCATION, AND SPECIFIC ACHIEVEMENTS.

YOU WILL BE SCORING THE RECORDS OF HIGHLY SPECIALIZED OFFICERS WHO, BECAUSE OF MISSION REQUIREMENTS, MAY HAVE A NARROW RANGE OF DUTIES WHEN COMPARED TO OTHERS WHO HAVE A BROADER RANGE OF EXPERIENCE.  THE AIR FORCE NEEDS OFFICERS WHO ARE HIGHLY SPECIALIZED AS WELL AS OFFICERS WHO ARE GENERALIZED.

THE FOLLOWING PARAGRAPH APPLIES TO LIEUTENANT COLONEL AND COLONEL BOARDS HELD BETWEEN 1 JULY 1996 AND 1 JANUARY 1998. MANY QUALIFIED NAVIGATORS, BECAUSE OF THEIR SPECIAL BACKGROUND AND SKILLS, HAVE BEEN ASSIGNED TO FILL CRITICAL OPERATIONAL REQUIREMENTS IN UNIT-LEVEL FLYING JOBS.  IN ASSESSING THEIR RECORDS, THE BOARD SHOULD CONSIDER THE FACT THAT THESE OFFICERS, BECAUSE OF THE NEEDS OF THE AIR FORCE, MAY NOT HAVE HAD THE OPPORTUNITY TO COMPETE FOR CAREER-DEVELOPMENT ASSIGNMENTS COMMENSURATE WITH THEIR GRADE AND EXPERIENCE OR MAY HAVE BEEN REASSIGNED TO A UNIT-LEVEL POSITION THAT IS NOT COMMENSURATE WITH THEIR GRADE AND EXPERIENCE.  FOR ALL LIEUTENANT COLONEL AND COLONEL BOARDS HELD AFTER 1 JANUARY 1998, THIS GUIDANCE APPLIES TO BOTH PILOTS AND NAVIGATORS.

FOR THE LINE COMPETITIVE CATEGORY, JOINT DUTY EXPERIENCE IS AN EXTREMELY IMPORTANT CONSIDERATION FOR PROMOTION.  THE LAW REQUIRES THAT THE QUALIFICATIONS OF OFFICERS ASSIGNED TO JOINT DUTY BE SUCH THAT THEY ARE EXPECTED, AS A GROUP, TO BE PROMOTED AT A RATE NOT LESS THAN THE RATE FOR ALL AIR FORCE OFFICERS IN

2

Exhibit C                    7 of 21

THE SAME GRADE AND COMPETITIVE CATEGORY. THERE ARE THREE OBJECTIVES: (1) OFFICERS WHO ARE SERVING ON, OR HAVE SERVED ON, THE JOINT STAFF ARE EXPECTED TO BE PROMOTED AT A RATE NOT LESS THAN THE RATE FOR OFFICERS WHO ARE SERVING ON, OR HAVE SERVED ON, THE SERVICE HEADQUARTERS STAFF; (2) JOINT SPECIALTY OFFICERS ARE EXPECTED TO BE PROMOTED AT A RATE NOT LESS THAN THE RATE FOR OFFICERS WHO ARE SERVING ON, OR HAVE SERVED ON, THE SERVICE HEADQUARTERS STAFF; AND (3) OFFICERS WHO ARE SERVING IN, OR HAVE SERVED IN, OTHER JOINT DUTY ASSIGNMENTS, ARE EXPECTED TO BE PROMOTED AT A RATE NOT LESS THAN THE AIR FORCE AVERAGE RATE. IT IS IMPORTANT THAT THESE STATUTORY OBJECTIVES BE MET.

SIMILARLY, GIVE CAREFUL CONSIDERATION TO OFFICERS WHO ARE IN THE ACQUISITION CORPS. THE LAW REQUIRES THAT THE QUALIFICATIONS OF OFFICERS ASSIGNED TO THESE DUTIES BE SUCH THAT THOSE OFFICERS ARE EXPECTED, AS A GROUP, TO BE PROMOTED AT A RATE NOT LESS THAN THE AIR FORCE AVERAGE RATE BOTH IN THE PROMOTION ZONE AND BELOW THE PROMOTION ZONE.

WHEN YOU SEE REPORTS FROM JOINT ACTIVITIES OR FROM ACTIVITIES OUTSIDE OR WITHIN THE AIR FORCE THAT WERE WRITTEN BY SUPERVISORS FROM ANOTHER SERVICE OR BY A CIVILIAN, GIVE THEM THE SAME WEIGHT AS YOU WOULD GIVE IF AN AIR FORCE OFFICER HAD WRITTEN THEM.

FOR OFFICERS IN THE HEALTH PROFESSIONS ELIGIBLE FOR PROMOTION TO LIEUTENANT COLONEL AND BELOW, CONSIDER AND OFFICER'S CLINICAL PROFICIENCY AND SKILL AS A HEALTH PROFESSIONAL TO AT LEAST AS GREAT AN EXTENT AS YOU GIVE TO THE OFFICER'S ADMINISTRATIVE AND MANAGEMENT SKILLS.

3

Exhibit C                    8 of 21

YOU MAY BE CONSIDERING OFFICERS RECALLED TO EXTENDED ACTIVE DUTY.  SOME RECALLEES HAVE HAD LENGTHY BREAKS IN SERVICE FOR WHICH LITTLE OR NO DOCUMENTATION IS AVAILABLE.  THEY WERE RECALLED TO MEET AIR FORCE NEEDS, AND THEY SHOULD NOT BE PENALIZED BECAUSE OF THEIR BREAK IN SERVICE.  THE SAME APPLIES TO OTHER OFFICERS WHO MAY NOT HAVE HAD AS MUCH PERFORMANCE DOCUMENTATION IN THEIR FOLDERS AS DO MOST OF THEIR CONTEMPORARIES.

SELECTION FOLDERS YOU MAY REVIEW MAY INCLUDE OERS RENDERED FROM 1975 THROUGH 1978 WITH A CONTROLLED EVALUATION OF PROMOTION POTENTIAL BY THE REVIEWER.  ALTHOUGH MANY OF YOU MAY HAVE PREPARED CONTROLLED OERS, THIS MAY BE YOUR FIRST OPPORTUNITY TO USE THEM IN THE SELECTION PROCESS.  REMEMBER, THEY WERE PREPARED UNDER RULES WHICH REQUIRED REVIEWERS THROUGHOUT THE AIR FORCE TO APPLY RATING CONTROLS CONSISTENTLY WITHIN EACH REVIEW GROUP. THIS SINGLE CONTROL CURVE WAS APPLIED WITHOUT REGARD TO QUALITATIVE DIFFERENCES BETWEEN REVIEW GROUPS, THE RATEE'S JOB, UNIT OF ASSIGNMENT, OR LEVEL OF RESPONSIBILITY.  ADDITIONALLY, THESE CONTROLLED RATINGS REPRESENTED THE REVIEWER'S ASSESSMENT OF THE INDIVIDUAL'S POTENTIAL RELATIVE ONLY TO OTHERS IN THE SAME GRADE IN THAT REVIEW GROUP DURING THE RATING PERIOD INVOLVED. YOU MUST THOROUGHLY AND OBJECTIVELY ASSESS EACH OF THESE RATINGS WITHIN THE CONTEXT OF THE RULES UNDER WHICH THEY WERE RENDERED AND CAREFULLY CONSIDER THEM IN RELATION TO OTHER OERS AND INFORMATION IN THE SELECTION FOLDER.  IN SUMMARY, THE CONTROLLED REPORTS CONSTITUTE ONLY A SMALL PART OF THE OFFICER'S ENTIRE

4

Exhibit C                              9 of 21

RECORD SO THEY SHOULD NOT NEGATE OR DIMINISH THE IMPORTANCE OF THE OTHER INFORMATION.

ASSESS ACADEMIC AND PROFESSIONAL MILITARY EDUCATION ACCOMPLISHMENTS IN TERMS OF HOW THEY ENHANCE PERFORMANCE AND POTENTIAL. DO NOT GIVE DISPROPORTIONATE WEIGHT TO THE MERE FACT THAT AN OFFICER HAS COMPLETED ADVANCED EDUCATION. NOT ALL OFFICERS HAVE THE SAME OPPORTUNITY TO ENROLL IN ADVANCED DEGREE PROGRAMS, PARTICULARLY THOSE WITH EXTENSIVE TDY COMMITMENTS. DO NOT CONSIDER COMPLETION OF PME AS A PASS-FAIL REQUIREMENT. THE OVERRIDING FACTOR MUST BE JOB PERFORMANCE.

EQUAL OPPORTUNITY IS AN ESSENTIAL ELEMENT OF OUR SELECTION SYSTEM. YOUR EVALUATION OF MINORITY AND WOMEN OFFICERS, AS WITH ALL OFFICERS, MUST CLEARLY AFFORD THEM FAIR AND EQUITABLE CONSIDERATION. YOU SHOULD BE PARTICULARLY SENSITIVE IN YOUR EVALUATION OF ALL RECORDS TO TAKE CARE THAT NO OFFICER'S PROMOTION OPPORTUNITY IS DISADVANTAGED BY PAST ATTITUDES OR SERVICE UTILIZATION POLICIES OR PRACTICES. YOU SHOULD EVALUATE EACH OFFICER'S POTENTIAL TO ASSUME THE RESPONSIBILITIES OF THE NEXT HIGHER GRADE, THE OVERRIDING FACTOR BEING PERFORMANCE OF ASSIGNED DUTIES, ALL OF WHICH ARE IMPORTANT. THIS PARAGRAPH SHOULD NOT BE INTERPRETED TO REQUIRE OR PERMIT PREFERENTIAL TREATMENT OF ANY OFFICER OR GROUP OF OFFICERS.

THE FOLLOWING PARAGRAPH APPLIES TO PROMOTION BOARDS HELD AFTER 1 AUGUST 1999. THE PROMOTION RECOMMENDATION FORM (PRF) IS THE TOOL USED BY SENIOR RATERS TO COMMUNICATE TO YOU THEIR ASSESSMENT OF THEIR OFFICERS' PROMOTION POTENTIAL. AS YOU ASSESS EACH RECORD, GIVE CAREFUL CONSIDERATION TO THE SENIOR RATER'S

5

Exhibit C                    10 of 21

PROMOTION RECOMMENDATION. A DEFINITELY PROMOTE (DP) IS THE
STRONGEST RECOMMENDATION A SENIOR RATER CAN GIVE AND IS BASED ON
THAT SENIOR RATER'S ASSESSMENT OF THE STRENGTH OF THE OFFICER'S
PERFORMANCE AND PERFORMANCE-BASED POTENTIAL FOR PROMOTION. IN
CONSIDERING A DP RECOMMENDATION, IT IS APPROPRIATE TO CONSIDER
THE COMPETITIVE CIRCUMSTANCES UNDER WHICH THE DP WAS AWARDED, AS
INDICATED ON THE PRF. HOWEVER, AS A RECONSTITUTION OF THE
CENTRAL SELECTION BOARD, IT IS YOUR RESPONSIBILITY TO EVALUATE
THE ENTIRE SPECTRUM OF QUALITY AMONG THE TOTAL POPULATION OF
ELIGIBLE OFFICERS. IN THE END, YOU ARE CHARGED TO SELECT FROM
THAT POPULATION BASED ON ALL THE INFORMATION BEFORE YOU.

IN YOUR FINAL REPORT, YOU MUST IDENTIFY ANY OFFICERS WHOSE
RECORDS, IN YOUR OPINION, INDICATE THEY SHOULD BE REQUIRED TO
SHOW CAUSE FOR RETENTION ON ACTIVE DUTY.

YOU ARE PROHIBITED FROM CONSIDERING AN OFFICER'S MARITAL
STATUS OR THE EMPLOYMENT, EDUCATIONAL, OR VOLUNTEER SERVICE
ACTIVITIES OF AN OFFICER'S SPOUSE. IF YOU SEE SUCH INFORMATION
IN THE RECORDS YOU REVIEW, YOU WILL DISREGARD IT.

YOU MAY ALSO SEE PERFORMANCE REPORTS DOCUMENTING THE
ACHIEVEMENTS OF OFFICERS INVOLVED IN IMPLEMENTING THE 1989
DEFENSE MANAGEMENT REPORT TO THE PRESIDENT. GIVE SPECIFIC
CONSIDERATION TO THESE ACHIEVEMENTS.

EACH OF YOU (THE PRESIDENT, MEMBERS, RECORDERS, AND
ADMINISTRATIVE SUPPORT PERSONNEL) IS RESPONSIBLE TO MAINTAIN THE
INTEGRITY AND INDEPENDENCE OF THIS SELECTION BOARD, AND TO FOSTER
THE CAREFUL CONSIDERATION, WITHOUT PREJUDICE OR PARTIALITY, OF
ALL ELIGIBLE OFFICERS. DEPARTMENT OF DEFENSE INSTRUCTION 1320.14

6

Exhibit C                                11 of 21

PROVIDES SPECIFIC RULES GOVERNING THE CONDUCT OF OFFICER
SELECTION BOARDS AND THE ACTIONS OF SELECTION BOARD PERSONNEL.

YOU MUST PAY PARTICULARLY CLOSE ATTENTION TO THE RULES
GOVERNING COMMUNICATIONS WITH AND AMONG OTHER BOARD MEMBERS, THE
INFORMATION AUTHORIZED TO BE FURNISHED TO YOU, AND THE PROCEDURES
YOU SHOULD FOLLOW IF YOU BELIEVE THAT THE INTEGRITY OF THIS
SELECTION BOARD HAS BEEN IMPROPERLY AFFECTED.

YOU MAY NOT RECEIVE, INITIATE, OR PARTICIPATE IN
COMMUNICATIONS OR DISCUSSIONS INVOLVING INFORMATION THAT DOD
INSTRUCTION 1320.14 PRECLUDES FROM CONSIDERATION BY A SELECTION
BOARD. YOU ARE TO BASE YOUR RECOMMENDATIONS ON THE MATERIAL IN
EACH OFFICER'S MILITARY RECORD, ANY INFORMATION I HAVE PROVIDED
TO THE BOARD IN ACCORDANCE WITH DOD INSTRUCTION 1320.14, AND ANY
INFORMATION ABOUT HIS OR HER OWN RECORD COMMUNICATED TO YOU BY
INDIVIDUAL ELIGIBLE OFFICERS UNDER INSTRUCTIONS I HAVE ISSUED.
IN YOUR DELIBERATIONS, YOU MAY DISCUSS YOUR OWN PERSONAL
KNOWLEDGE AND EVALUATION OF THE PROFESSIONAL QUALIFICATIONS OF
ELIGIBLE OFFICERS TO THE EXTENT THAT SUCH MATTERS ARE NOT
PRECLUDED IN LAW, DOD INSTRUCTION 1320.14, OR AN AIR FORCE
INSTRUCTION FROM CONSIDERATION BY A SELECTION BOARD OR INCLUSION
IN AN OFFICER'S MILITARY PERSONNEL RECORD. YOU MAY NOT DISCUSS
OR DISCLOSE THE OPINION OF ANY PERSON NOT A MEMBER OF THE BOARD
CONCERNING AN OFFICER BEING CONSIDERED UNLESS THAT OPINION IS
CONTAINED IN MATERIAL PROVIDED TO THE BOARD UNDER THE PROVISIONS
OF DOD INSTRUCTION 1320.14.

I AM THE ONLY PERSON WHO MAY APPEAR IN PERSON TO ADDRESS YOU
ON ANY MATTER. ALL COMMUNICATIONS WITH THIS BOARD OTHER THAN

7

Exhibit C                    12 of 21

THOSE THAT ARE CLEARLY ADMINISTRATIVE, MUST BE IN WRITING, GIVEN
TO EACH OF YOU, AND MADE PART OF THE BOARD'S RECORD. I HAVE
DESIGNATED IN WRITING THOSE PERSONS AUTHORIZED TO PROVIDE ROUTINE
ADMINISTRATIVE INFORMATION TO YOU.

BEFORE THE REPORT OF THE SELECTION BOARD IS SIGNED, THE
RECOMMENDATIONS MAY BE DISCLOSED ONLY TO MEMBERS OF THE BOARD,
RECORDERS, AND THOSE ADMINISTRATIVE SUPPORT PERSONNEL I HAVE
DESIGNATED IN WRITING. AFTER YOU SIGN THE BOARD REPORT, ONLY THE
RECOMMENDATIONS OF THE BOARD MAY BE DISCLOSED. EXCEPT AS
AUTHORIZED BY DOD INSTRUCTION 1320.14 AND SECTION 616(E) OF TITLE
10, UNITED STATES CODE, THE PROCEEDINGS OF THE BOARD MAY NOT BE
DISCLOSED TO ANY PERSON NOT A BOARD MEMBER OR A BOARD RECORDER.

IF AT ANY TIME YOU BELIEVE THAT YOU CANNOT IN GOOD
CONSCIENCE PERFORM YOUR DUTIES AS A MEMBER OF THE BOARD WITHOUT
PREJUDICE OR PARTIALITY, YOU HAVE A DUTY TO REQUEST RELIEF BY ME
FROM THIS DUTY. I WILL HONOR ANY SUCH REQUEST. IF YOU BELIEVE
THAT THE INTEGRITY OF THE BOARD'S PROCEEDINGS HAS BEEN AFFECTED
BY IMPROPER INFLUENCE OF MILITARY OR CIVILIAN AUTHORITY,
MISCONDUCT BY THE BOARD PRESIDENT OR A MEMBER, OR ANY OTHER
REASON, YOU HAVE A DUTY TO REQUEST FROM ME OR THE SECRETARY OF
DEFENSE RELIEF FROM YOUR OBLIGATION NOT TO DISCLOSE BOARD
PROCEEDINGS AND, UPON RECEIVING IT, TO REPORT THE BASIS FOR YOUR
BELIEF.

UPON COMPLETION OF BOARD DELIBERATIONS, YOU WILL, AS A
MINIMUM, CERTIFY IN YOUR REPORT TO ME THAT:

(1)  TO THE BEST OF YOUR KNOWLEDGE, THE BOARD COMPLIED
WITH THESE INSTRUCTIONS;

8

Exhibit C                                13 of 21

(2)  YOU WERE NOT SUBJECT TO OR AWARE OF ANY CENSURE, REPRIMAND, OR ADMONISHMENT ABOUT THE RECOMMENDATIONS OF THE BOARD OR THE EXERCISE OF ANY LAWFUL FUNCTION WITHIN THE AUTHORIZED DISCRETION OF THE BOARD;

(3)  YOU WERE NOT SUBJECT TO OR AWARE OF ANY ATTEMPT TO COERCE OR INFLUENCE IMPROPERLY ANY ACTION IN THE FORMULATION OF THE BOARD'S RECOMMENDATION;

(4)  YOU WERE NOT PARTY TO OR AWARE OF ANY ATTEMPT AT UNAUTHORIZED COMMUNICATIONS;

(5)  TO THE BEST OF YOUR KNOWLEDGE, THE BOARD REVIEWED THE RECORDS OF EACH OFFICER WHOSE NAME WAS FURNISHED TO THE BOARD;

(6)  THE OFFICERS RECOMMENDED FOR PROMOTION ARE, IN THE OPINION OF THE MAJORITY OF THE MEMBERS OF THE BOARD, FULLY QUALIFIED AND BEST QUALIFIED TO MEET THE NEEDS OF THE AIR FORCE AMONG THOSE OFFICERS WHOSE NAMES WERE FURNISHED TO THE BOARD.

9

Exhibit C                    14 of 21

MEMORANDUM OF INSTRUCTIONS
SPECIAL SELECTION BOARDS
REGULAR AIR FORCE (REGAF) APPOINTMENT
7 JANUARY 2002

THESE BOARDS ARE BEING CONVENED UNDER THE PROVISIONS OF TITLE 10, UNITED STATES CODE; DOD DIRECTIVES 1310.2, 1320.11, AND 1320.12; DOD INSTRUCTION 1320.14; AIR FORCE INSTRUCTIONS 36-2501 AND 36-2610; AND AIR FORCE POLICY DIRECTIVE 36-25. THE PURPOSE OF THE BOARDS IS TO CONSIDER OFFICERS OF THE LINE FOR REGULAR AIR FORCE APPOINTMENT.

FOR SPECIAL SELECTION BOARDS, QUOTAS ARE NOT PROVIDED. SELECTION/NONSELECTION VIA THE SPECIAL SELECTION BOARD PROCESS IS DETERMINED BY A COMPARISON OF THE CONSIDEREE'S RECORD AGAINST THE LOWEST SCORING RECORDS OF OFFICERS SELECTED FOR REGULAR APPOINTMENT AND THE HIGHEST SCORING RECORDS OF NONSELECTEES FROM THE ORIGINAL BOARD.

YOU MUST ACT IN THE BEST INTEREST OF THE AIR FORCE AND NOT ANY PARTICULAR COMMAND, SPECIALTY, OR GROUP. WHILE YOU ARE HERE YOU WORK DIRECTLY FOR ME UNDER THE SUPERVISION OF THE BOARD PRESIDENT, WHO IS A NONVOTING MEMBER AND PERFORMS ADMINISTRATIVE DUTIES TO ENSURE THE BOARDS ARE CONDUCTED IN ACCORDANCE WITH TITLE 10, UNITED STATES CODE; DOD DIRECTIVES AND INSTRUCTIONS; AIR FORCE INSTRUCTION; AIR FORCE POLICY DIRECTIVES; AND MY GUIDANCE. THE BOARD PRESIDENT HAS NO AUTHORITY TO DETERMINE ANY MATTER THAT WOULD CONSTRAIN THE BOARD FROM RECOMMENDING FOR REGULAR AIR FORCE APPOINTMENT THOSE OFFICERS BEST QUALIFIED TO MEET THE NEEDS OF THE AIR FORCE.

Exhibit C                    15 of 21

YOU WILL USE THE WHOLE PERSON CONCEPT TO ASSESS SUCH FACTORS AS JOB PERFORMANCE, PROFESSIONAL QUALITIES, LEADERSHIP, DEPTH AND BREADTH OF EXPERIENCE, JOB RESPONSIBILITY, ACADEMIC AND PROFESSIONAL MILITARY EDUCATION, AND SPECIFIC ACHIEVEMENTS.

YOU WILL BE SCORING THE RECORDS OF HIGHLY SPECIALIZED OFFICERS WHO, BECAUSE OF MISSION REQUIREMENTS, MAY HAVE A NARROW RANGE OF DUTIES WHEN COMPARED TO OTHERS WHO HAVE A BROADER RANGE OF EXPERIENCE.  THE AIR FORCE NEEDS OFFICERS WHO ARE HIGHLY SPECIALIZED AS WELL AS OFFICERS WHO ARE GENERALIZED.

WHEN YOU SEE REPORTS FROM JOINT ACTIVITIES OR FROM ACTIVITIES OUTSIDE OR WITHIN THE AIR FORCE THAT WERE WRITTEN BY SUPERVISORS FROM ANOTHER SERVICE OR BY A CIVILIAN, GIVE THEM THE SAME WEIGHT AS YOU WOULD GIVE IF AN AIR FORCE OFFICER HAD WRITTEN THEM.

YOU MAY BE CONSIDERING OFFICERS RECALLED TO EXTENDED ACTIVE DUTY.  SOME RECALLEES HAVE HAD LENGTHY BREAKS IN SERVICE FOR WHICH LITTLE OR NO DOCUMENTATION IS AVAILABLE.  THEY WERE RECALLED TO MEET AIR FORCE NEEDS, AND THEY SHOULD NOT BE PENALIZED BECAUSE OF THEIR BREAK IN SERVICE.  THE SAME APPLIES TO OTHER OFFICERS WHO MAY NOT HAVE HAD AS MUCH PERFORMANCE DOCUMENTATION IN THEIR FOLDERS AS DO MOST OF THEIR CONTEMPORARIES.

SELECTION FOLDERS YOU MAY REVIEW MAY INCLUDE OERS RENDERED FROM 1975 THROUGH 1978 WITH A CONTROLLED EVALUATION OF PROMOTION POTENTIAL BY THE REVIEWER.  ALTHOUGH MANY OF YOU MAY HAVE PREPARED CONTROLLED OERS, THIS MAY BE YOUR FIRST OPPORTUNITY TO USE THEM IN THE SELECTION PROCESS.  REMEMBER, THEY WERE PREPARED

2

Exhibit C                    16 of 21

UNDER RULES WHICH REQUIRED REVIEWERS THROUGHOUT THE AIR FORCE TO APPLY RATING CONTROLS CONSISTENTLY WITHIN EACH REVIEW GROUP. THIS SINGLE CONTROL CURVE WAS APPLIED WITHOUT REGARD TO QUALITATIVE DIFFERENCES BETWEEN REVIEW GROUPS, THE RATEE'S JOB, UNIT OF ASSIGNMENT, OR LEVEL OF RESPONSIBILITY.  ADDITIONALLY, THESE CONTROLLED RATINGS REPRESENTED THE REVIEWER'S ASSESSMENT OF THE INDIVIDUAL'S POTENTIAL RELATIVE ONLY TO OTHERS IN THE SAME GRADE IN THAT REVIEW GROUP DURING THE RATING PERIOD INVOLVED. YOU MUST THOROUGHLY AND OBJECTIVELY ASSESS EACH OF THESE RATINGS WITHIN THE CONTEXT OF THE RULES UNDER WHICH THEY WERE RENDERED AND CAREFULLY CONSIDER THEM IN RELATION TO OTHER OERS AND INFORMATION IN THE SELECTION FOLDER.  IN SUMMARY, THE CONTROLLED REPORTS CONSTITUTE ONLY A SMALL PART OF THE OFFICER'S ENTIRE RECORD SO THEY SHOULD NOT NEGATE OR DIMINISH THE IMPORTANCE OF THE OTHER INFORMATION.

ASSESS ACADEMIC AND PROFESSIONAL MILITARY EDUCATION ACCOMPLISHMENTS IN TERMS OF HOW THEY ENHANCE PERFORMANCE AND POTENTIAL.  DO NOT GIVE DISPROPORTIONATE WEIGHT TO THE MERE FACT THAT AN OFFICER HAS COMPLETED ADVANCED EDUCATION.  NOT ALL OFFICERS HAVE THE SAME OPPORTUNITY TO ENROLL IN ADVANCED DEGREE PROGRAMS, PARTICULARLY THOSE WITH EXTENSIVE TDY COMMITMENTS.  DO NOT CONSIDER COMPLETION OF PME AS A PASS-FAIL REQUIREMENT.  THE OVERRIDING FACTOR MUST BE JOB PERFORMANCE.

EQUAL OPPORTUNITY IS AN ESSENTIAL ELEMENT OF OUR SELECTION SYSTEM.  YOUR EVALUATION OF MINORITY AND WOMEN OFFICERS, AS WITH ALL OFFICERS, MUST CLEARLY AFFORD THEM FAIR AND EQUITABLE CONSIDERATION.  YOU SHOULD BE PARTICULARLY SENSITIVE IN YOUR

3

Exhibit C                    17 of 21

EVALUATION OF ALL RECORDS TO TAKE CARE THAT NO OFFICER'S SELECTION OPPORTUNITY IS DISADVANTAGED BY PAST ATTITUDES OR SERVICE UTILIZATION POLICIES OR PRACTICES. YOU SHOULD EVALUATE EACH OFFICER'S POTENTIAL FOR APPOINTMENT IN THE REGULAR AIR FORCE, THE OVERRIDING FACTOR BEING PERFORMANCE OF ASSIGNED DUTIES, ALL OF WHICH ARE IMPORTANT. THIS PARAGRAPH SHOULD NOT BE INTERPRETED TO REQUIRE OR PERMIT PREFERENTIAL TREATMENT OF ANY OFFICER OR GROUP OF OFFICERS.

YOU ARE PROHIBITED FROM CONSIDERING AN OFFICER'S MARITAL STATUS OR THE EMPLOYMENT, EDUCATIONAL, OR VOLUNTEER SERVICE ACTIVITIES OF AN OFFICER'S SPOUSE. IF YOU SEE SUCH INFORMATION IN THE RECORDS YOU REVIEW, YOU WILL DISREGARD IT.

EACH OF YOU (THE PRESIDENT, MEMBERS, RECORDERS, AND ADMINISTRATIVE SUPPORT PERSONNEL) IS RESPONSIBLE TO MAINTAIN THE INTEGRITY AND INDEPENDENCE OF THIS SELECTION BOARD, AND TO FOSTER THE CAREFUL CONSIDERATION, WITHOUT PREJUDICE OR PARTIALITY, OF ALL ELIGIBLE OFFICERS. DEPARTMENT OF DEFENSE INSTRUCTION 1320.14 PROVIDES SPECIFIC RULES GOVERNING THE CONDUCT OF OFFICER SELECTION BOARDS AND THE ACTIONS OF SELECTION BOARD PERSONNEL. THESE PRINCIPLES APPLY TO REGULAR AIR FORCE APPOINTMENT BOARDS TO THE EXTENT THAT IT IS STATED IN THIS MOI.

YOU MUST PAY PARTICULARLY CLOSE ATTENTION TO THE RULES GOVERNING COMMUNICATIONS WITH AND AMONG OTHER BOARD MEMBERS, THE INFORMATION AUTHORIZED TO BE FURNISHED TO YOU, AND THE PROCEDURES YOU SHOULD FOLLOW IF YOU BELIEVE THAT THE INTEGRITY OF THIS SELECTION BOARD HAS BEEN IMPROPERLY AFFECTED.

4

Exhibit C                    18 of 21

YOU MAY NOT RECEIVE, INITIATE, OR PARTICIPATE IN COMMUNICATIONS OR DISCUSSIONS INVOLVING INFORMATION THAT DOD INSTRUCTION 1320.14 PRECLUDES FROM CONSIDERATION BY A SELECTION BOARD. YOU ARE TO BASE YOUR RECOMMENDATIONS ON THE MATERIAL IN EACH OFFICER'S MILITARY RECORD, ANY INFORMATION I HAVE PROVIDED TO THE BOARD IN ACCORDANCE WITH DOD INSTRUCTION 1320.14, AND ANY INFORMATION ABOUT HIS OR HER OWN RECORD COMMUNICATED TO YOU BY INDIVIDUAL ELIGIBLE OFFICERS UNDER INSTRUCTIONS I HAVE ISSUED. IN YOUR DELIBERATIONS, YOU MAY DISCUSS YOUR OWN PERSONAL KNOWLEDGE AND EVALUATION OF THE PROFESSIONAL QUALIFICATIONS OF ELIGIBLE OFFICERS TO THE EXTENT THAT SUCH MATTERS ARE NOT PRECLUDED IN LAW, DOD INSTRUCTION 1320.14, OR AN AIR FORCE INSTRUCTION FROM CONSIDERATION BY A SELECTION BOARD OR INCLUSION IN AN OFFICER'S MILITARY PERSONNEL RECORD. YOU MAY NOT DISCUSS OR DISCLOSE THE OPINION OF ANY PERSON NOT A MEMBER OF THE BOARD CONCERNING AN OFFICER BEING CONSIDERED UNLESS THAT OPINION IS CONTAINED IN MATERIAL PROVIDED TO THE BOARD UNDER THE PROVISIONS OF DOD INSTRUCTION 1320.14.

I AM THE ONLY PERSON WHO MAY APPEAR IN PERSON TO ADDRESS YOU ON ANY MATTER. ALL COMMUNICATIONS WITH THIS BOARD OTHER THAN THOSE THAT ARE CLEARLY ADMINISTRATIVE, MUST BE IN WRITING, GIVEN TO EACH OF YOU, AND MADE PART OF THE BOARD'S RECORD. I HAVE DESIGNATED IN WRITING THOSE PERSONS AUTHORIZED TO PROVIDE ROUTINE ADMINISTRATIVE INFORMATION TO YOU.

BEFORE THE REPORT OF THE SELECTION BOARD IS SIGNED, THE RECOMMENDATIONS MAY BE DISCLOSED ONLY TO MEMBERS OF THE BOARD, RECORDERS, AND THOSE ADMINISTRATIVE SUPPORT PERSONNEL I HAVE

5

Exhibit C                         19 of 21

DESIGNATED IN WRITING. AFTER YOU SIGN THE BOARD REPORT, ONLY THE RECOMMENDATIONS OF THE BOARD MAY BE DISCLOSED. EXCEPT AS AUTHORIZED BY DOD INSTRUCTION 1320.14 AND SECTION 616(E) OF TITLE 10, UNITED STATES CODE, THE PROCEEDINGS OF THE BOARD MAY NOT BE DISCLOSED TO ANY PERSON NOT A BOARD MEMBER OR A BOARD RECORDER.

IF AT ANY TIME YOU BELIEVE THAT YOU CANNOT IN GOOD CONSCIENCE PERFORM YOUR DUTIES AS A MEMBER OF THE BOARD WITHOUT PREJUDICE OR PARTIALITY, YOU HAVE A DUTY TO REQUEST RELIEF BY ME FROM THIS DUTY. I WILL HONOR ANY SUCH REQUEST. IF YOU BELIEVE THAT THE INTEGRITY OF THE BOARD'S PROCEEDINGS HAS BEEN AFFECTED BY IMPROPER INFLUENCE OF MILITARY OR CIVILIAN AUTHORITY, MISCONDUCT BY THE BOARD PRESIDENT OR A MEMBER, OR ANY OTHER REASON, YOU HAVE A DUTY TO REQUEST FROM ME OR THE SECRETARY OF DEFENSE RELIEF FROM YOUR OBLIGATION NOT TO DISCLOSE BOARD PROCEEDINGS AND, UPON RECEIVING IT, TO REPORT THE BASIS FOR YOUR BELIEF.

UPON COMPLETION OF BOARD DELIBERATIONS, YOU WILL, AS A MINIMUM, CERTIFY IN YOUR REPORT TO ME THAT:

(1) TO THE BEST OF YOUR KNOWLEDGE, THE BOARD COMPLIED WITH THESE INSTRUCTIONS;

(2) YOU WERE NOT SUBJECT TO OR AWARE OF ANY CENSURE, REPRIMAND, OR ADMONISHMENT ABOUT THE RECOMMENDATIONS OF THE BOARD OR THE EXERCISE OF ANY LAWFUL FUNCTION WITHIN THE AUTHORIZED DISCRETION OF THE BOARD;

(3) YOU WERE NOT SUBJECT TO OR AWARE OF ANY ATTEMPT TO COERCE OR INFLUENCE IMPROPERLY ANY ACTION IN THE FORMULATION OF THE BOARD'S RECOMMENDATION;

6

Exhibit C                                        20 of 21

(4)   YOU WERE NOT PARTY TO OR AWARE OF ANY ATTEMPT AT UNAUTHORIZED COMMUNICATIONS;

(5)   TO THE BEST OF YOUR KNOWLEDGE, THE BOARD REVIEWED THE RECORDS OF EACH OFFICER WHOSE NAME WAS FURNISHED TO THE BOARD;

(6)   THE OFFICERS RECOMMENDED FOR REGULAR APPOINTMENT ARE, IN THE OPINION OF THE MAJORITY OF THE MEMBERS OF THE BOARD, FULLY QUALIFIED AND BEST QUALIFIED TO MEET THE NEEDS OF THE AIR FORCE AMONG THOSE OFFICERS WHOSE NAMES WERE FURNISHED TO THE BOARD.

7

Exhibit C                                                21 of 21

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

**AIR FORCE INSTRUCTION 36-2406**

**15 APRIL 2005**

*Personnel*

**OFFICER AND ENLISTED**
**EVALUATION SYSTEMS**



## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

---

NOTICE:    This publication is available digitally on the AFDPO WWW site at:
**http://www.e-publishing.af.mil.**

---

OPR:  HQ AFPC/DPPPEP
        (MSgt Robert Neumuller)
Supersedes AFI 36-2406, 5 April 2005

Certified by: HQ AFPC/DPP
(Col Steven F. Maurmann)
Pages: 160
Distribution: F

---

The governing policy for this instruction is Air Force Policy Directive (AFPD) 36-24, *Military Evaluations.* This instruction provides procedures for implementing Air Force (AF) Evaluation Systems policy for the Officer Evaluation System (OES) and Enlisted Evaluation System (EES). It describes how to prepare, submit, and manage forms required by this Air Force Instruction (AFI). It applies to all major commands (MAJCOM), field operating agencies (FOA), direct reporting units (DRU), and other Air Force activities, as well as Regular Air Force, Air National Guard (ANG) and Air Force Reserve (USAFR) activities, officers, and enlisted (except ANG) personnel. While the philosophy and intent of the OES/EES pertain to the ANG and USAFR, modifications are necessary. This instruction also provides procedures governing evaluation of brigadier and major generals.

Field agencies may not publish supplements that change basic policies/procedures or merely duplicate the text of these instructions. Supplements initiated at MAJCOM level or below require HQ USAF/DPFP and HQ AFPC/DPPPE approval before publication. Process supplements that affect any military personnel function as shown in AFI 33-360, volume 1, *Publications Management Program.* Send published copies of approved supplements to HQ USAF/DPFPP, HQ AFPC/DPPPE, HQ AFPC/DPPPA, and HQ ARPC/DPP. Field agencies must get HQ AFPC/DPPPE and AFDPO/PPP approval before using locally created versions of the AF Forms prescribed by this instruction. The Privacy Act of 1974 affects this instruction. Title 10, United States Code, Section 8013 and Executive Order 9397, 22 November 1943, authorize the Air Force to collect and maintain the records in this instruction. System of Records Notice F036 AF PC A, *Effectiveness/Performance Reporting Systems,* applies. Evaluators (except civilian and foreign-service evaluators) must provide their social security number (SSN). Use the SSN to verify the identity of the evaluator for research and accountability. Maintain and dispose of all records created as a result of prescribed processes IAW AFI 33-332, *Air Force Privacy Act Program.*

The Paperwork Reduction Act of 1974 as amended in 1996, and the Forms Management Program IAW AFI 37-160, volume 2, *Forms Management Program,* affects this instruction. See **Attachment 1** for glossary of references and supporting information used in this publication. **Attachment 2** is a quick ref-

**Table 8.2.  What to Enter in Section VI (Group Size) on the PRF (ADL Lt Col and below only).**

| RULE | A<br><br>If the allocation rate is | B<br><br>and the number of IPZ eligible officers in an entire ML is (see notes 1 and 3) | C<br><br><br><br>then enter |
|------|----|----|----|
| 1 | 10 percent | 10 or more | "N/A." |
| 2 | | 9 or less | the actual number of eligibles within the entire ML. |
| 3 | 15 percent | 7 or more | "N/A." |
| 4 | | 6 or less | the actual number of eligibles within the entire ML. |
| 5 | 20 percent | 5 or more | "N/A." |
| 6 | | 4 or less (see note 2) | The actual number of eligibles within the entire ML. |
| 7 | 25 percent | 4 or more | "N/A." |
| 8 | | 3 or less (see note 2) | the actual number of eligibles within the entire ML. |
| 9 | 35 to 90 | 3 or more | "N/A." |
| 10 | percent | 2 or less (see note 2) | the actual number of eligibles within the entire ML. |

*NOTES:*

1. APZ eligibles do not generate "Definitely Promote" allocations; therefore, they do not apply when determining the entry for section VI on the PRF.

2. For Line officers only, even if there are only APZ eligibles in an ML, a single "Definitely Promote" allocation is still available.  In this case, the most deserving APZ officer, with a record of such quality to warrant a "DP," may be awarded a "Definitely Promote" recommendation, and all APZ officers in the ML receive a "0" in section VI on the PRF.

3. For Non-Line officers in or above-the-promotion zone only (I/APZ), always enter "N/A" regardless of the number of eligibles unless they fall under the criteria of paragraph **8.4.2.** (Board Adds/Promotion Zone Changes).  When a Non-Line I/APZ officer is added to a board or their promotion zone changes on or after Day 66 (PRF Final Allocation Date), enter "1" for IPZ or "0" for "APZ" officers in the "Group Size" block.  HQ AFPC/DPPE can approve exceptions when in the best interest of the Air Force.

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**

*AIR FORCE INSTRUCTION 36-2603*

*1 MARCH 1996*

*Personnel*



*AIR FORCE BOARD FOR CORRECTION OF*
*MILITARY RECORDS*

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**NOTICE:** This publication is available digitally on the SAF/AAD WWW site at: http://afpubs.hq.af.mil. If you lack access, contact your Publishing Distribution Office (PDO).

---

OPR: AFBCMR (Mr. John J. D'Orazio)
Supersedes AFR 31-3, 10 August 1992

Certified by: AFBCMR (Mr. Mack M. Burton)
Pages: 8
Distribution: F

---

This instruction implements AFMD 42, 10 U.S.C. 1034 and 1552, Department of Defense Instruction (DoDI) 1336.6, Correction of Military Records, 28 December 1994, and Department of Defense Directive (DoDD) 7050.6, Military Whistleblower Protection Act, 3 September 1992. It sets up procedures for correction of military records to remedy error or injustice. It tells how to apply for correction of military records and how the Air Force Board for Correction of Military Records (AFBCMR, or the Board) considers applications. It defines the Board's authority to act on applications.

This instruction directs collecting and maintaining information subject to the Privacy Act of 1974 authorized by 10 U.S.C. 1034 and 1552. System of Records notice F035 SAFCB A, Military Records Processed by the Air Force Correction Board, applies.

*SUMMARY OF REVISIONS*

This publication revises AFR 31-3, 10 August 1992, to conform with the Chief of Staff policy to convert Air Force Regulations to Air Force Instructions.

**1. Setup of the Board.**

1.1. The AFBCMR operates within the Office of the Secretary of the Air Force according to 10 U.S.C. 1552. The Board consists of civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force. Three members constitute a quorum of the Board.

**2. Board Responsibilities.**

2.1. Considering Applications. The Board considers all individual applications properly brought before it. In appropriate cases, it directs correction of military records to remove an error or injustice, or recommends such correction.

3.4.1.  Applicants should mail the original signed DD Form 149 and any supporting documents to the Air Force address on the back of the form.

3.5.  Meeting Time Limits.  Ordinarily, applicants must file an application within 3 years after the error or injustice was discovered, or, with due diligence, should have been discovered. An application filed later is untimely and may be denied by the Board on that basis.

3.5.1.  The Board may excuse untimely filing in the interest of justice.

3.5.2.  If the application is filed late, applicants should explain why it would be in the interest of justice for the Board to waive the time limits.

3.6.  Stay of Other Proceedings.  Applying to the AFBCMR does not stay other proceedings.

3.7.  Counsel Representation.  Applicants may be represented by counsel, at their own expense.

3.7.1.  The term "counsel" includes members in good standing of the bar of any state, accredited representatives of veterans' organizations recognized under 38 U.S.C. 3402, and other persons determined by the Executive Director of the Board to be competent to represent the interests of the applicant.

3.7.2.  See DoDD 7050.6 for special provisions for counsel in cases processed under 10 U.S.C. 1034.

3.8.  Page Limitations on Briefs.  Briefs in support of applications:

- May not exceed 25 double-spaced typewritten pages.
- Must be typed on one side of a page only with not more than 12 characters per inch.
- Must be assembled in a manner that permits easy reproduction.

3.8.1.  Responses to advisory opinions must not exceed 10 double-spaced typewritten pages and meet the other requirements for briefs.

3.8.2.  These limitations do not apply to supporting documentary evidence.

3.8.3.  In complex cases and upon request, the Executive Director of the Board may waive these limitations.

3.9.  Withdrawing Applications.  Applicants may withdraw an application at any time before the Board's decision.  Withdrawal does not stay the 3-year time limit.

## 4.  Board Actions.

4.1.  Board Information Sources.  The applicant has the burden of providing sufficient evidence of probable material error or injustice.  However, the Board:

- May get additional information and advisory opinions on an application from any Air Force organization or official.
- May require the applicant to furnish additional information necessary to decide the case.

4.1.1.  Applicants will normally be given an opportunity to review and comment on advisory opinions and additional information obtained by the Board.

3

4.2. Consideration by the Board. A panel consisting of at least three board members considers each application. One panel member serves as its chair. The panel's actions and decisions constitute the actions and decisions of the Board.

4.2.1. The panel may decide the case in executive session or authorize a hearing. When a hearing is authorized, the procedures in paragraph **4.4.** apply.

4.3. Board Deliberations. Normally only members of the Board and Board staff will be present during deliberations. The panel chair may permit observers for training purposes or otherwise in furtherance of the functions of the Board.

4.4. Board Hearings. The Board in its sole discretion determines whether to grant a hearing. Applicants do not have a right to a hearing before the Board.

4.4.1. The Executive Director will notify the applicant or counsel, if any, of the time and place of the hearing. Written notice will be mailed 30 days in advance of the hearing unless the notice period is waived by the applicant. The applicant will respond not later than 15 days before the hearing date, accepting or declining the offer of a hearing and, if accepting, provide information pertaining to counsel and witnesses. The Board will decide the case in executive session if the applicant declines the hearing or fails to appear.

4.4.2. When granted a hearing, the applicant may appear before the Board in person, represented by counsel, or in person with counsel and may present witnesses. It is the applicant's responsibility to notify witnesses, arrange for their attendance at the hearing, and pay any associated costs.

4.4.3. The panel chair conducts the hearing, maintains order, and ensures the applicant receives a full and fair opportunity to be heard. Formal rules of evidence do not apply, but the panel observes reasonable bounds of competency, relevancy, and materiality. Witnesses other than the applicant will not be present except when testifying. Witnesses will testify under oath or affirmation. A recorder will record the proceedings verbatim. The chair will normally limit hearings to 2 hours but may allow more time if necessary to ensure a full and fair hearing.

4.4.4. Additional provisions apply to cases processed under 10 U.S.C. 1034. See DoDD 7050.6.

4.5. The Board will not deny or recommend denial of an application on the sole ground that the issue already has been decided by the Secretary of the Air Force or the President of the United States in another proceeding.

4.6. Board Decisions. The panel's majority vote constitutes the action of the Board. The Board's decision will be in writing and will include determinations on the following issues:

- Whether the provisions of the Military Whistleblowers Protection Act apply to the application. This determination is needed only when the applicant invokes the protection of the Act, or when the question of its applicability is otherwise raised by the evidence.

- Whether the application was timely filed and, if not, whether the applicant has demonstrated that it would be in the interest of justice to excuse the untimely filing. When the Board determines that an application is not timely, and does not excuse its untimeliness, the application will be denied on that basis.

- Whether the applicant has exhausted all available and effective administrative remedies. If the applicant has not, the application will be denied on that basis.

4

- Whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief.

- In Military Whistleblowers Protection Act cases only, whether to recommend to the Secretary of the Air Force that disciplinary or administrative action be taken against any Air Force official whom the Board finds to have committed an act of reprisal against the applicant. Any determination on this issue will not be made a part of the Board's record of proceedings and will not be given to the applicant, but will be provided directly to the Secretary of the Air Force under separate cover (paragraph **2.2.**).

4.7. Record of Proceedings. The Board staff will prepare a record of proceedings following deliberations which will include:

- The name and vote of each Board member.
- The application.
- Briefs and written arguments.
- Documentary evidence.
- A hearing transcript if a hearing was held.
- Advisory opinions and the applicant's related comments.
- The findings, conclusions, and recommendations of the Board.
- Minority reports, if any.
- Other information necessary to show a true and complete history of the proceedings.

4.8. Minority Reports. A dissenting panel member may prepare a minority report which may address any aspect of the case.

4.9. Separate Communications. The Board may send comments or recommendations to the Secretary of the Air Force as to administrative or disciplinary action against individuals found to have committed acts of reprisal prohibited by the Military Whistleblowers Protection Act and on other matters arising from an application not directly related to the requested correction of military records. Such comments and recommendations will be separately communicated and will not be included in the record of proceedings or given to the applicant or counsel.

4.10. Final Action by the Board. The Board acts for the Secretary of the Air Force and its decision is final when it:

- Denies any application (except under 10 U.S.C. 1034)
- Grants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not involve an appointment or promotion requiring confirmation by the Senate.

4.10.1. The Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision.

**5. Decision of the Secretary of the Air Force.** The Secretary may direct such action as he or she deems appropriate on each case, including returning the case to the Board for further consideration. Cases returned to the Board for further reconsideration will be accompanied by a brief statement of the reasons

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN F. COCHRANE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:07-cv-0437 (RCL)** |
| | ) |
| **MICHAEL W. WYNNE** | ) |
| **Secretary of the Air Force,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Based upon the motion, the opposition thereto, and the entire record herein, it is this ____ day of

_____, 20___ hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.


_____
Royce C. Lamberth
United States District Judge

Copies to:
Parties via ECF